**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| TYHITT BEMBER, Plaintiff, | : | Case No. 3:25-cv-1354 |
| v. | : | |
| HARRIS, ET AL., Defendants. | : | JANUARY 28, 2026 |

**INITIAL REVIEW ORDER**

Pro se plaintiff Tyhitt Bember, a sentenced inmate,[1] currently incarcerated at the MacDougall-Walker Correctional Institution, filed this civil rights action bringing claims under section 1983 of title 42 of the U.S. Code, the Americans with Disabilities Act ("ADA"), and state law. See Complaint ("Compl.") (Doc. No. 1). He seeks monetary damages and injunctive relief. Id. at 13-14.

Mr. Bember's claims center around conduct that he alleges amounted to indifference to his serious medical needs. He names five defendants: MacDougall Correctional Officer ("C.O.") Harris; MacDougall Warden Jesus Guadarrama; District Administrator Nick Rodriguez; MacDougall Captain Masse; and MacDougall Deputy Warden Mangiafico. Id. ¶¶ 1, 3-4. He sues these defendants in their individual and official capacities. Id.

After initial review of the Complaint, the court determines that Mr. Bember is permitted to proceed on: his ADA claim against C.O. Harris in his official capacity; his

[1] The court may "take judicial notice of relevant matters of public record." See Sanchez v. RN Debbie, 2018 WL 5314916, at *2 (D. Conn. Oct. 26, 2018) (citing Giraldo v. Kessler, 694 F.3d 161, 164 (2d Cir. 2012)). The publicly-available DOC website shows that Mr. Bember was sentenced on March 3, 2022, to fifty-five years of imprisonment. See DOC, Inmate Locator, available at https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=401344 (last visited 9 Jan, 2026).

Eighth Amendment deliberate indifference claim against C.O. Harris in his individual and official capacities; his First Amendment retaliation claim against C.O. Harris in his individual capacity; and his ADA retaliation claim against C.O. Harris in his official capacity. All other claims are dismissed. If Mr. Bember can allege well pleaded facts supporting his claims against Warden Guadarrama, District Administrator Rodriguez, Captain Masse, and Deputy Warden Mangiafico, he may replead within 21 days.

## I. STANDARD OF REVIEW

The Prison Litigation Reform Act requires federal courts to review complaints brought by incarcerated plaintiffs seeking relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). Upon review, the court must dismiss a complaint, or any portion of a complaint, over which the court concludes it lacks subject matter jurisdiction, is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks relief from a defendant who is immune from such relief. See 28 U.S.C. section 1915(e)(2)(B), 1915A(b); Dillon v. Rosen, 2022 WL 4538397, at *5 (S.D.N.Y. Sept. 28, 2022) (citing Fed. R. Civ. P. 12(h)(3)). Dismissal may be with or without prejudice. See Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004).

A complaint must include sufficient facts to afford a defendant fair notice of the claims and the grounds upon which they are based and demonstrate a plausible right to relief. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). Conclusory allegations are insufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plaintiff must plead “enough facts to state a claim to relief that is plausible on its face.” See Twombly, 550 U.S. at 570.

"Pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" See Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)). Even self-represented parties, however, must satisfy the basic rules of pleading. See Wynder v. McMahon, 360 F.3d 73, 79 n.11 (2d Cir. 2004).

## II. FACTUAL ALLEGATIONS

Mr. Bember is diagnosed with Crohn's disease. See Compl. at ¶ 11. A common symptom of Crohn's disease is an urgent need to defecate. Id. On October 23, 2023, As the time relevant to his Complaint, Mr. Bember alleges that he was performing his job duties as a concourse worker in a MacDougall visiting room. Id. at ¶¶ 10, 12. He was locked in the visiting room while finishing his work, and he knocked on the control center window to gain C.O. Harris's attention to unlock the visiting room because he had completed his duties. Id. at ¶¶ 12-13. After failing to obtain C.O. Harris's attention, Mr. Bember tapped the window again. Id. at ¶ 14. C.O. Harris became upset and told Mr. Bember he would have to wait to be moved from the visiting room. Id. at ¶ 15.

Mr. Bember said he waited in the visiting room "an unnecessarily extended" time. Id. at ¶ 16. While waiting, Mr. Bember felt an urgent need to defecate. Id. Mr. Bember asked C.O. Harris to allow him to use the restroom and informed him of his condition, but C.O. Harris ignored his request and said "fuck you." Id. at ¶ 17. Mr. Bember says he was forced to defecate in a trash bin, which left him feeling humiliated. Id. at ¶¶ 18-19. C.O. Harris laughed at him and said, "you shouldn't have gotten on my nerves." Id. at ¶ 20.

On October 24, 2023, Mr. Bember submitted a written complaint through the

administrative grievance procedure to Captain Masse and Deputy Warden Mangiafico. Id. at ¶¶ 21-22. Mr. Bember says that, in the months after the October 23, 2023 incident, C.O. Harris "verbally tormented" Mr. Bember and told other inmates what had happened, leading to the other inmates laughing at and harassing him. Id. at ¶ 25.

On May 3, 2024, Mr. Bember returned to his housing unit from work, but he was locked out of the unit. Id. at ¶ 23. Mr. Bember asked C.O. Harris for help unlocking his unit C.O. Harris made him wait and said, "you been complaining, huh? Fuck you, go shit in a trash can again." Id. at ¶ 24.

On October 19, 2024, Mr. Bember had what he describes as a "negative verbal exchange" with another inmate, during which the other inmate "made vulgar, harassing comments to" him about what had happened on October 23, 2023. Id. at ¶ 26. Mr. Bember and that inmate engaged in a physical altercation, and Mr. Bember said the inmate assaulted him. Id.

## III. DISCUSSION

### A. ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." See 42 U.S.C. § 12132. Mr. Bember "may not bring a claim pursuant to Title II of the ADA against a state actor in [the actor's] individual capacity." See Lenti v. Connecticut, No. 3:20-CV-127 (SRU), 2020 WL 4275600, at *7 (D. Conn. July 24, 2020) (citing Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001)). Any Title II claim against the defendants in their individual capacities is

therefore dismissed. The court will therefore analyze whether Mr. Bember has stated a viable claim against defendants in their official capacities.[2] See id.

To state a cognizable ADA claim, Mr. Bember must allege facts establishing three factors: (1) he is a qualified person with a disability, (2) the defendants are considered an entity subject to the ADA, and (3) he was denied the opportunity to participate in or benefit from an institutional program, service, or activity, or otherwise discriminated against because of his disabilities. See Wright v. New York State Dep't of Corr., 831 F.3d 64, 72 (2d Cir. 2016). "A qualified individual can base a discrimination claim under Title II of the ADA on one of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." See Lenti, 2020 WL 427500, at *8 (quoting Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks omitted)).

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual." See 42 U.S.C. section 12102(1)(A). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." See 42 U.S.C. § 12102(2)(A). "[I]n assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which

[2] Because Mr. Bember seeks prospective injunctive relief, the court need not, at this time, analyze whether Mr. Bember plausibly alleges enough facts to support damages against defendants in their official capacities. See Lenti v. Connecticut, No. 3:20-CV-127 (SRU), 2020 WL 4275600, at *7 (D. Conn. July 24, 2020) ("Under certain circumstances, an inmate may assert a Title II ADA claim for money damages against a state actor in her official capacity."). The parties may brief this issue at a later stage of the case. Here there is a claim where relief may be granted, and the defendant is not immune from the claim of monetary relief sought. While it may be unlikely for ADA claim for money damages to succeed, the appropriate venue for such a determination is a later stage in the case. Id. at *8-*10.

merely affect major life activities from those that substantially limit those activities." See Troeger v. Ellenville Cent. Sch. Dist., 523 F. App'x 848, 852 (2d Cir. 2013) (quoting Ryan v. Grae & Rybicki P.C., 135 F.3d 867, 870 (2d Cir. 1998)) (internal quotation marks omitted).

The court determines, for the purposes of the IRO, that Mr. Bember's Crohn's disease diagnosis satisfies the first element of the analysis that the ADA applies to state prisons. See Harris v. Brennan, No. 3:21CV906(MPS), 2021 WL 4593611, at *2 (D. Conn. Oct. 6, 2021) (citing Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S 206, 209 (1998) (ADA "includes State prisons and prisoners within its coverage")).

For the final element, Mr. Bember may invoke one of three theories: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." See Fulton, 591 F.3d at 43; see also Tsombanidis v. West Haven Fire Dep't., 352 F.3d 565, 573 (2d Cir. 2003). "With respect to a reasonable accommodation claim, 'the relevant inquiry asks not whether the benefits available to persons with disabilities and to others are actually equal, but whether those with disabilities are as a practical matter able to access benefits to which they are legally entitled.'" See Lenti, 2020 WL 4275600, at *8 (quoting Henrietta D. v. Bloomberg, 331 F.3d 261, 273 (2d Cir. 2003)).

Mr. Bember has plausibly alleged facts to suggest that C.O. Harris's conduct violated the ADA by failing to provide him with a reasonable accommodation. "A prison's provision of accessible bathroom facilities is a 'service, program, or activity' within the meaning of the ADA." Id. at *9. Mr. Bember's requested accommodation is "unrestricted access to a toilet at all times." See Compl. at 14. Based on Mr. Bember's

pleaded facts, the only defendant with plausible involvement is C.O. Harris. Thus, Mr. Bember can proceed on his Title II ADA claim against C.O. Harris in his official capacity for failure to make a reasonable accommodation. All ADA claims against defendants Guadarrama, Rodriguez, Masse, and Mangiafico are dismissed.

B. Constitutional Claims

Regarding Mr. Bember's constitutional claims against all of the defendants, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." See Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010). The Second Circuit has clarified that, when assessing personal involvement, "there is no special rule for supervisory liability." See Tangreti v. Bachman, 983 F.3d 609, 618 (2d Cir. 2020). To prevail on a section 1983 claim against a supervising official, a plaintiff must plead and prove that the supervising defendant, "violated the Constitution" through his or her "own individual actions." Id. "[C]onclusory claims that a supervisor did not respond to letters or grievances" are "insufficient to establish personal involvement." See Rogers v. Lamont, 2022 WL 3716446, at *4 (D. Conn. Aug. 29, 2022) (internal quotation marks and citation omitted).

For this reason, Mr. Bember's conclusory claims of "supervisory liability" against Warden Guadarrama, District Administrator Rodriguez, Captain Masse, or Deputy Captain Mangiafico are dismissed. See Compl. ¶¶ 32-35. Mr. Bember pleads no facts to suggest that these defendants had direct personal involvement in any constitutional violation. All constitutional claims against these four defendants in their individual capacities are dismissed. See Schlosser v. Droughn, No. 3:19-CV-1445 (SRU), 2021

WL 4263374, at *6 (D. Conn. Sept. 20, 2021) (dismissing claims against supervisory officials where no facts alleged suggesting they had any involvement).

Moreover, in the context of a section 1983 suit, plaintiffs may only sue state officials in their official capacities to the extent that they seek non-monetary, injunctive relief. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989). Here, Mr. Bember seeks injunctive relief in the form of an order for "the defendants to make special, appropriate accommodations . . . to allow him unrestricted access to a toilet at all times." See Compl. at 14.

1. Eighth Amendment Deliberate Indifference

Mr. Bember alleges C.O. Harris violated the Eighth Amendment through his refusal to accommodate Mr. Bember's medical condition. See Compl. at ¶ 29.

The Eighth Amendment, which forbids cruel and unusual punishment, has been interpreted to prohibit conditions in state prisons that subject incarcerated individuals to the "wanton and unnecessary infliction of pain." See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The ban on cruel and unusual punishment "does not mandate comfortable prisons, but neither does it permit inhumane ones." See Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted). An Eighth Amendment claim related to the conditions of an inmate's confinement, often referred to as a "deliberate indifference" claim, is comprised of objective and subjective elements. See Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

Objectively, an inmate must be deprived of a "basic human need," or be subjected to a "substantial risk of serious harm" to health or safety. See Rhodes, 452 U.S. at 347; Farmer, 511 U.S. at 834. Conditions are objectively serious enough to

implicate the Eighth Amendment where, alone or in combination, they produce "deprivation of a single, identifiable human need such as food, warmth, or exercise." See Wilson v. Seiter, 501 U.S. 294, 304 (1991). There is no bright-line rule or "static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency." See Jabbar v. Fischer, 683 F.3d 54, 57 (2d Cir. 2012) (internal quotation marks and citations omitted).

Finally, though plaintiffs need not demonstrate actual physical injury or harm to successfully bring an Eighth Amendment claim, "the absence of present physical injury will often be probative in assessing the risk of future harm." See Smith v. Carpenter, 316 F.3d 178, 187 (2d Cir. 2003). To meet the subjective element, an inmate must allege that a defendant possessed culpable intent, that is, the defendant knew that the inmate faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. See Farmer, 511 U.S. at 834, 837. The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." Id. at 837. Allegations of "mere negligence" are insufficient to plead a deliberate indifference claim. See Wilson, 501 U.S. at 305. Rather, a plaintiff must provide evidence to support a claim that a defendant knew of and disregarded a serious risk of harm to his health and wellbeing. See Tangreti, 983 F.3d at 619.

"Under the Eighth Amendment, inmates have a right to sanitary living conditions and the necessary materials to maintain adequate personal hygiene." See Lenti, 2020 WL 4275600, at *7 (citing Walker v. Schult, 717 F.3d 119, 127 (2d Cir. 2013). A "temporary deprivation of the right to use the toilet, in the absence of serious physical

harm or a serious risk of contamination, simply does not rise to the level of an Eighth Amendment violation." See Hart v. City of New York, No. 11 CIV. 4678 RA, 2013 WL 6139648, at *8 (S.D.N.Y. Nov. 18, 2013) (quoting Whittead v. Lazerson, No. 96 Civ. 2746(AGS), 1998 WL 259929, at *2 (S.D.N.Y. May 21, 1998)). The court in Hart distinguished that general principle from the facts before it where that plaintiff "specifically informed [the officer] that he had [a medical condition], which causes frequent urination, and that he was nonetheless denied his repeated requests to use the bathroom." Id. at *9.

Such a pattern is alleged in this case. Mr. Bember alleges that C.O. Harris left him in the visitor room for "an unnecessarily extended period of time," despite Mr. Bember informing C.O. Harris that he needed to use the restroom and that he had a relevant and debilitating medical condition. See Compl. ¶¶ 16-17. These pleaded facts are sufficient to plausibly offer that C.O. Harris possessed the requisite state of mind. Thus, Mr. Bember's Eighth Amendment deliberate indifference claim will proceed for discovery against C.O. Harris in his individual and official capacities.

2. Retaliation

Next, Mr. Bember alleges C.O. Harris retaliated against him, presumably for filing a grievance against C.O. Harris. See Compl. at ¶¶ 21, 27, 40. Mr. Bember alleges C.O. Harris retaliated by telling other inmates to harass Mr. Bember, leading to an assault of Mr. Bember. Id. at ¶ 40. The court construes this claim as proceeding against C.O. Harris only in his individual capacity because Mr. Bember's request for injunctive relief does not relate to any alleged retaliation. Id. at ¶¶ 21, 27, 40.

Because of their overlap, the court examined the First Amendment retaliation and

ADA retaliation claims together. "To state a First Amendment retaliation claim, a plaintiff must allege facts showing '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" See Lenti, 2020 WL 4275600, at *11 (quoting Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015)). To state a retaliation claim under the ADA, "a plaintiff must show that: (1) he engaged in an activity protected by the ADA; (2) the defendant was aware of his conduct; (3) the defendant took adverse action against him; and (4) a causal connection exists between the protected conduct and the alleged adverse action of the defendant." See id. (quoting Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002)); see also 42 U.S.C. section 12203(a).

Even considering that courts should view "such claims with skepticism and require that a plaintiff support them with specific facts," Lenti, 2020 WL 4275600, at *11, Mr. Bember has plausibly pled retaliation claims under both the First Amendment and the ADA. First, filing a grievance is protected activity for purposes of both claims. See Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (First Amendment); Treglia, 313 F.3d at 720 (ADA). For purposes of the ADA and First Amendment, Mr. Bember alleges C.O. Harris knew about the grievance. See Compl. at ¶ 24.

As for whether C.O. Harris took adverse action against him, the Second Circuit has held that "[i]nsulting or disrespectful comments directed at an inmate generally do not rise to" the level of actionable adverse action. See Davis, 320 F.3d at 353. Thus, C.O. Harris's alleged comments alone are insufficient. See Compl. at ¶¶ 21, 25, 40. However, Mr. Bember also alleges that C.O. Harris told other inmates to harass Mr.

Bember, eventually leading to an assault. See Compl. at ¶ 40. The court finds that this alleged directive is "something more," such that C.O. Harris's conduct may constitute adverse actions. See Davis, 320 F.3d at 353-54.

Mr. Bember has, at this early stage, pled facts "sufficient to support the inference that the speech played a substantial part in the adverse action." Id. at 354. At a later stage of the case, Mr. Bember must show that the grievance filing—and not Mr. Bember's episode—instigated C.O. Harris's adverse action, but for present purposes the claims are sufficiently pled.

Therefore, the court determines that, Mr. Bember may proceed against C.O. Harris in his individual capacity for retaliation in violation of the First Amendment, and Mr. Bember may also proceed against C.O. Harris in his official capacity for retaliation in violation of the ADA. See Sakon v. Connecticut, No. 3:22-CV-897 (AWT), 2025 WL 896832, at *7 (D. Conn. Mar. 24, 2025) (holding that "a plaintiff may not bring an ADA claim against a state actor in her individual capacity").

## IV. CONCLUSION [3]

It is hereby ordered that:

**(1)** The Title II ADA claim against C.O. Harris in his official capacity for failure to make a reasonable accommodation will PROCEED. The ADA claim against C.O. Harris in his individual capacity is DISMISSED with prejudice.

**(2)** The Eighth Amendment deliberate indifference claim against C.O. Harris in his individual and official capacities will PROCEED.

**(3)** The First Amendment retaliation claim against C.O. Harris in his individual capacity will PROCEED. The First Amendment retaliation claim against C.O. Harris in his official capacity is DISMISSED.

**(4)** The ADA retaliation claim against C.O. Harris in his official capacity will PROCEED. The ADA retaliation claim against C.O. Harris in his individual capacity is DISMISSED.

**(5)** All claims against Warden Guadarrama, District Administrator Rodriguez, Captain Masse, and Deputy Captain Mangiafico in their individual and official capacities are DISMISSED. Mr. Bember, if he can allege facts sufficient to support his allegations

[3] The court limits its review for purposes of 28 U.S.C. Section 1915A to federal law claims because the purpose of an initial review order is to conduct a prompt initial screening to determine whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims, then the court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss of motion for summary judgment. More generally, the court's determination for purposes of in initial review order under 28 U.S.C Section 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment.

against these four defendants, may replead within 21 days.

**(6)** Within twenty-one (21) days of this Order, the Clerk shall verify the current work address of C.O. Harris and mail a copy of the Complaint, this Order, and a waiver of service of process request packet to C.O. Harris in his individual capacity at his confirmed address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of each request. If C.O. Harris fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service and C.O. Harris shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(7)** The Clerk of Court is instructed to prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal Service is directed to effect service of the Complaint and this Order on C.O. Harris in his official capacity at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, and to file a return of service within thirty (30) days from the date of this Order.

**(8)** C.O. Harris shall file a response to the Complaint, either an answer or motion to dismiss, within thirty (30) days from the date the Notice of Lawsuit and Waivers of Service of Summons forms are mailed to him. If he chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claims recited above. He may also include all additional defenses permitted by the Federal Rules.

**(9)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. The court does not expect to grant any extensions. Discovery requests need not be filed with the

court.

**(10)** All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

**(11)** If Mr. Bember changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that Mr. Bember MUST notify the court. Failure to do so can result in the dismissal of the case. Mr. Bember must give notice of a new address even if he is incarcerated. Mr. Bember should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Bember has more than one pending case, he should indicate all case numbers in the notification of change of address. Mr. Bember should also notify the Defendant or the attorney for the Defendant of his new address.

**(12)** Mr. Bember shall utilize the Prisoner E-filing Program when filing documents with the court. Mr. Bember is advised that the Program may be used only to file documents with the court. Local Court Rule 5(f) provides that discovery requests are not to be filed with the court. Therefore, discovery requests must be served on Defendant's attorney by regular mail.

**(13)** The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy of the Standing Order to the parties.

**(14)** The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

**So ordered.**

Dated at New Haven, Connecticut, this 28th day of January, 2026.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge